IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGIE ORTEGA,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL B. MUKASEY, Attorney General of the United States, and EMILIO T. GONZALEZ, as Director of the Bureau of U.S. Citizenship and Immigration Services,<br><br>  Defendants. | No. 08 C 1121<br>Judge Manning<br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants, by and through undersigned counsel, hereby Reply to Plaintiff's Response to Government's Motion to Dismiss for Lack of Jurisdiction. In reply to said response, Defendants state as follows:

This Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction under Section 360(a)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1503(a)(1) (1996). Jurisdiction to consider Plaintiff's claim is barred pursuant to § 1503(a)(1), because Plaintiff's application for a certificate of citizenship "arose by reason of, or in connection with" her removal proceedings.

Section 1503(a)(1) provides, in pertinent part, that a proceeding for declaration of United States nationality may not be instituted ". . . in any case if the issue of such person's status as a national of the United States . . . arose by reason of, or in connection with any removal proceeding under the provisions of this or any other act . . ." 8 U.S.C. § 1503(a)(1) (1996).

The issue of Plaintiff's status arose by reason of, or in connection with removal proceedings. Plaintiff did not apply for a certificate of citizenship until removal proceedings were pending against her. While Plaintiff resided in the United States for at least ten years prior to institution of removal proceedings against her, she failed to seek adjudication of her status until the former INS placed her in removal proceedings. *See* Record of Deportable/Inadmissible Alien (attached as Exhibit A). Indeed, in an interview just prior to initiation of removal proceedings, Plaintiff claimed she was a native and citizen of Mexico. *See* Exhibit A. Only after removal proceedings were brought against Plaintiff did she begin to assert status as a United States national. Although the former INS commenced removal proceedings against Plaintiff on September 25, 2001, she did not file her N-600, Application for Certificate of Citizenship until April 12, 2002, once removal proceedings were well underway. Moreover, Plaintiff raised her alleged status as a U.S. national as a defense to removal before the Immigration Judge. Accordingly, it is beyond question that Plaintiffs status as a national of the United States "arose by reason of, or in connection with [her] removal proceeding." As a result, § 1503(a)(1) bars her claim and this Court should dismiss the Complaint for lack of jurisdiction.

Plaintiff claims that her Application for Certificate of Citizenship was "a separate administrative proceeding instituted outside of any removal proceedings." (Resp. at 2.) Plaintiff points to the fact that she filed a memorandum in support of her release from custody detailing her claim of citizenship ten (10) days after filing her N-600, Application for Certificate of Citizenship. Plaintiff claims, per this memorandum, "the issue of [her] citizenship first arose in the removal proceedings on April 22, 2002, ten days after Plaintiff filed her N-600 Application." (Resp. at 4). However, this ignores the fact that the issue of Plaintiff's citizenship arose in the

removal proceedings at least a month prior to that filing. At a custody hearing on March 21, 2002, Plaintiff contended she derived U.S. citizenship. *See* Motion to Reconsider Request for Bond (attached as Exhibit B). Thus, Plaintiff's N-600 Application, dated April 12, 2002, was not the first time she asserted her claim to citizenship in the removal proceedings. Rather, Plaintiff was actively asserting her status as a national of the United States in connection with her custody and removal proceedings, well in advance to filing her N-600 Application for Certificate of Citizenship.

Plaintiff cites *North v. Rooney*, an unpublished district court opinion from New Jersey, as authority that her claim is not barred. (Resp. at 4). In that case, the district court held that an action seeking judicial review by declaratory action did not arise out of, or in connection with a removal proceeding because no removal proceedings were presently ongoing. *North*, 2003 WL 21432590 *4 (D.N.J. 2003). However, the holding in *North* was rejected by *Rios-Valenzuela v. Department of Homeland Sec.*, 506 F.3d 393 (5th Cir. 2007). In *Rios-Valenzuela*, the Fifth Circuit explained that it was not persuaded by *North* on three accounts:

> First, the district court changed the tense of the verb in the exception from "arose" to "arise." Second, the *North* court immediately qualified its analysis of the exception: "Moreover, the issue of plaintiff's citizenship actually arose well before the commencement of the 1999 removal proceedings as demonstrated by plaintiff's argument that his citizenship status was fully litigated and determined in his favor by an Immigration Judge ruling in 1989. . ." Finally, the *Said* court's analysis is more consistent with the statute's structure and text.

*Rios-Valenzuela*, 56 F.3d at 399 n.8 *citing Said v. Eddy*, 87 F. Supp. 2d 937, 943 (D. Alaska 2000). Defendants' respectfully urge this Court to adopt the reasoning of the Fifth Circuit in *Rios-Valenzuela*. Further, as in *Rios-Valenzuela*, the *North* case is distinguishable from the

instant case. The citizenship status at issue in *North* arose well before removal proceedings were commenced, whereas the issue of Plaintiff's citizenship in this case "arose by reason of, or in connection with" her removal proceedings.

Plaintiff attempts to distinguish *Rios-Valenzuela* by stating that she "obtained a definitive ruling" on the issue of her citizenship from the Immigration Judge whereas the Immigration Judge in *Rios-Valenzuela* merely terminated the removal proceedings without prejudice. (Resp. at 5). However, this case and *Rios-Valenzuela* are indistinguishable. In both instances, the applicants defended against removal in the proceedings by submitting evidence of citizenship. *Rios-Valenzuela*, 506 F.3d at 396. In both instances, the Immigration Judge terminated the removal proceedings. *Id.* In both instances, the Administrative Appeals Office upheld a District Director's denial of their N-600 applications notwithstanding a favorable determination by the Immigration Judge. *Id.* Moreover, just as in *Rios-Valenzuela*, the Immigration Judge's determination on the issue of Plaintiff's citizenship was not definitive. The Immigration Judge merely accepted Plaintiff's proffered defense and terminated removal proceedings. The process for obtaining a "definitive ruling" on the issue of citizenship, as Plaintiff is well-aware, lies with the adjudication of a N-600, Application for Certificate of Citizenship.

Plaintiff next contends that *Rios-Valenzuela* was wrongly decided because it leaves applicants like Plaintiff, "who have no further administrative remedies to exhaust," without recourse to "translate a favorable ruling in the removal proceeding to a grant of U.S. Citizenship by a federal district court." (Resp. at 6-7). However, this result was expressly considered by the Fifth Circuit and held to pass muster. The court in *Rios-Valenzuela* conceded that a straight forward reading of the statute appeared to leave Rios in limbo, victorious in the removal action

against him, yet unable to obtain judicial review of his claim of citizenship through review of the executive's denial of his N-600 application. *Rios-Valenzuela*, 506 F.3d at 399. However, the court noted that doctrinally, the judiciary is not permitted to impose upon a statute an interpretation that does violence to its plain language. *Id.* at 400. The court went on to qualify its holding by acknowledging that Rios could obtain judicial review at "some future time." *Id.* at 399. Thus, once removal proceedings have run their full course and terminated, any future citizenship claim would not arise in removal proceedings. *Id.; see also Said*, 87 F.Supp.2d at 943 ("When and if plaintiff is at some future time denied a right or privilege of a United States national by a department, agency, or official of the United States, she will be entitled to bring an action as authorized."). This narrow reading is consistent with the concern that the federal courts not be used as tools to frustrate and interfere with removal proceedings. *Id.*

Nevertheless, Plaintiff points to the fact that the five-year statute of limitations governing Plaintiff's citizenship claim may bar any action challenging the denial of a future claim. (Resp. at 8). This is not necessarily true. The case of *Bensky v. Powell*, 391 F.3d 894 (7th Cir. 2004), upon which Plaintiff relies to in concluding the statute of limitations has run, is distinguishable from the instant case. In *Bensky*, the plaintiff challenged a Certificate of Loss of Nationality, which was issued forty years earlier. *Bensky*, 391 F.3d at 896. The Seventh Circuit held that the State Department's approval of the Certificate of Loss of Nationality was a final administrative determination and therefore the period within which Bensky had to sue had long since expired. *Id.* In this case, however, a denial of a Certificate of Citizenship is the final administrative determination. Further, there is no reason why Plaintiff could not apply for citizenship at some future time, when no removal proceedings have been initiated. *Rios-Valenzuela*, 506 F.3d at

399. If that claim is denied, then she would have a right to seek a declaratory judgment. Indeed, this is exactly what the court in *Rios-Valenzuela* suggested as an avenue by which a similarly situated plaintiff could bring her citizenship claim before the courts. *Id.* at 402.

Alternatively, if the five-year statute of limitations does bar Plaintiff's claim, such is not an unconstitutional deprivation of due process, as Plaintiff asserts in her brief. (Resp. at 9). The jurisdictional bar in § 1503(a)(1) is plain. Under our system of jurisprudence it has long been well-established that every person is presumed to know the law. *United States v. Bryza*, 522 F.2d 414 (7th Cir. 1975). This is true even in a civil context. *Lucas v. Wisconsin Elec. Power Co.*, 466 F.2d 638 (7th Cir. 1972). Yet Plaintiff chose to seek declaratory relief based on the denial of a claim to citizenship that "arose by reason of, or in connection with" her removal proceedings." If Plaintiff's action is infirm based on the five-year statute of limitations, her cause is with the attorneys that represented her. Plaintiff had counsel throughout her removal proceedings, and it is well settled that lawyers' mistakes in civil litigation are imputed to their clients. *Magala v. Gonzales*, 434 F.3d 523, 525 (7th Cir. 2005).

Again, this Court does not need to read the exception in § 1503(a)(1) as "forever hanging an albatross around the neck of those who first raise citizenship as a defense in a removal proceeding." *Rios-Valenzuela*, 506 F.3d at 399. Rather, so long as a citizenship claim finds its genesis outside the context of removal proceedings, the exception is no bar to jurisdiction. *Id.* Now that removal proceedings have terminated, if Plaintiff sought a Certificate of Citizenship, she could then, upon exhaustion of remedies, properly bring a declaratory action under § 1503(a). Accordingly, Plaintiff's argument that "Plaintiff will have no means of challenging the Government's denial of her status as a U.S. citizen. . ." lacks merit.