IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGIE ORTEGA, ) <br> ) <br>         **Plaintiff,** ) <br> ) <br>         v. ) <br> ) <br> ERIC H. HOLDER, JR., Attorney General ) <br> of the United States, and ALEJANDRO ) <br> MAYORKAS, Director of the Bureau of ) <br> U.S. Citizenship and Immigration Services, ) <br> ) <br>         **Defendants.** ) <br> ) | No. 08 C 1121 <br><br> Judge Blanche M. Manning <br> Magistrate Michael T. Mason |

**AMENDED OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The doctrine of collateral estoppel does not apply in this case because proceedings under 8 U.S.C. § 1503(a) are *de novo*, and Congress did not intend for terminations of removal proceedings to preclude citizenship denials. In addition, the issue of Plaintiff's citizenship was not actually litigated or determined in her removal proceedings. As such, this Court should deny Plaintiff's motion for summary judgment and set this matter for trial on the merits.

**BACKGROUND**

**I. THE ADMINISTRATIVE PROCESS & DISTRICT COURT ACTION**

On September 25, 2001, while Ortega was serving a three year sentence for a robbery conviction, the Immigration and Naturalization Service ("INS") commenced removal proceedings against her on the basis of her conviction of a crime of violence. (SOF at ¶ 16). On April 12, 2002, while removal proceedings were still pending, Ortega filed a Form N-600, Application for Certificate of Citizenship. (SOF at ¶ 9). On April 24, 2002, the Chicago Office of the INS denied Ortega's application. (SOF at ¶ 10). On May 6, 2002, Ortega appealed the

denial of her application to the Office of Administrative Appeals ("AAO") for INS. (SOF at ¶ 12). On May 7, 2008, while Ortega's appeal was pending before the AAO, an immigration judge terminated the removal proceedings against her. (SOF at ¶ 21). In the N-600 proceedings, the AAO ultimately held that Ortega failed to establish her claimed citizenship and dismissed her appeal on February 28, 2003. (SOF at ¶ 21). Ortega then filed an action in federal district court and requested that the Court declare her a United States citizen pursuant to a proceeding under 8 U.S.C. § 1503. (Compl. at ¶¶ 16, 22). Now in federal custody pending prosecution for firearms charges, Ortega argues for the first time that the immigration judge's termination of her removal proceedings is binding on the issue of her citizenship. (SOF at ¶¶ 34-35).

## II. Plaintiff's Claim To Citizenship

Ortega was born in Aguascalientes, Mexico. (SOF at ¶ 1). At the time of her birth, Ortega's mother was a citizen of Mexico. (SOF at ¶ 8). Ortega thus claims that she derived citizenship through her father under 8 U.S.C. § 1401(g), which provides that a person born outside the United States "of parents, one of whom is an alien, and the other a citizen of the United States . . . shall be citizens of the United States at birth. 8 U.S.C. § 1401. However, in order to qualify for acquired citizenship under 8 U.S.C. § 1401, Ortega must also meet the definition of "child" under 8 U.S.C. § 1101(c)(1). To constitute a "child" for purposes of section 1101(c)(1), a person must be "legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile." 8 U.S.C. § 1101(c)(1). Ortega claims that she was "legitimated" because her parents were purportedly common law married at the time of her birth. (Compl. at ¶¶ 16-19).

The State of Illinois does not recognize common law marriage. *Lynch v. Bowen*, 681 F. Supp. 506, 510-11 (N.D. Ill. 1988). As such, Ortega avers that her parents were common law

married in the State of Texas, which does allow for common law marriage.[1] *See* TEX FAM CODE ANN § 2.401 (Vernon 1993).

Ortega's father lived in Chicago all of his life, except for a brief sojourn in Texas sometime in 1980. (SOF at ¶ 24). From spring 1980 until one month after Ortega's birth, Ortega's parents repeatedly traveled back and forth between Chicago and Fort Worth as they visited family and looked for work. (SOF at ¶ 25). When staying in Fort Worth, Ortega's parents resided with family.[2] (SOF at ¶ 26). While Ortega's parents often talked of marriage, it was always something that was going to occur in the future. (SOF at ¶ 27). Her parents never had a present agreement that they were informally married. *Id*. Although Ortega's parents separated in 1989, there were no formal, legal proceedings associated with their separation. (SOF at ¶ 28). Ortega's mother ultimately married in 1992. (SOF at ¶ 29). In contrast to her purported common law marriage to Ortega's father, this was a formal marriage – there was a ceremony, and the marriage was licensed in the State of Illinois. (SOF at ¶ 30). Ortega's mother never claimed to be married to Ortega's father on any of her immigration paperwork. (SOF at ¶

---

[1] Specifically, TEX FAM CODE ANN § 2.401 (Vernon 1993), entitled Proof of Informal Marriage, provides:

> (a) In a judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that: (1) a declaration of their marriage has been signed as provided by this subchapter; or (2) the man and woman agree to be married and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.
>
> (b) In a proceeding in which a marriage is to be proved as provdied by subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.

TEX FAM CODE ANN § 2.401 (Vernon 1993); *White v. State Farm Mut. Auto. Ins. Co.,* 907 F. Supp. 1012, 1017 (E.D. Tex. 1995); *Shepherd v. Ledford*, 926 S.W.2d 405, 408 (Ct. App. Tex. 1996). Section 2.402 provides for "declaration and registration of informal marriage."

[2] In fact, domiciliaries of Illinois may not contract a common law marriage outside the state during their visits to other states which recognize common law marriage. *Lynch*, 681 F. Supp. at 510; *see also In re Estate of Stahl*, 301 N.E. 2d 82, 83-84 (1st Dist. 1973) (refusing to recognize a Texas common law marriage by a couple domiciled in Illinois).

31). Indeed, on the paperwork, she only claimed to have been married once – a marriage which took place in 1992. *Id*.

Discovery in this case is ongoing. It is clear the parties dispute the following material facts: (1) whether Ortega's parents resided or were domiciled in the State of Texas; (2) whether Ortega's parents entered into an agreement to be married presently; (3) whether Ortega's parents actually lived together as husband and wife; and (4) whether they represented to others in the community that they were husband and wife.

## ARGUMENT

### I. Proceedings Under 8 U.S.C. § 1503 Are De Novo.

Plaintiff's removal proceedings have no bearing on this case – judicial review in this matter is *de novo*. Plaintiff seeks a declaratory judgment under 8 U.S.C. § 1503(a), which authorizes any person within the United States to institute a declaratory judgment action if they are denied "a right or privilege as a national of the United States." 8 U.S.C. § 1503(a). A suit under section 1503(a) is not one for judicial review of agency action. Rather, the statute authorizes a de novo judicial determination of the status of the plaintiff, and the district court makes its own findings of fact and conclusions of law. *Richards v. Secretary of State,* 752 F.2d 1413, 1417 (9th Cir. 1983); *Vance v. Terrazas*, 444 U.S. 252, 256 (1980) (claim for declaratory judgment of citizenship under 8 U.S.C. 1503(a) was properly considered *de novo* by district court); *see also Wong Wing Foo v. McGrath*, 196 F.2d 120, 122 (9th Cir. 1952); *Maldonado-Sanchez v. Shultz*, 706 F. Supp. 54, 58 (D.D.C. 1989); *Lee Wing Hong, et al. v. Dulles*, 214 F.2d 753, (7th Cir. 1954); *Rivera v. Albright*, No. 99-328, 2000 WL 1514075, at *1 (N.D. Ill. 2000) ("we are not reviewing . . . an agency decision here . . . we examine the facts *de novo* to

determine whether Plaintiff is a United States citizen.").³ Because judicial review under section 1503(a) is *de novo*, the Court owes no deference to either the decision of the immigration judge terminating Ortega's removal proceedings or the subsequent decision of USCIS denying her application for a certificate of citizenship. The Court must itself determine whether Ortega has met her burden of proving her derivative citizenship.

**II. CONGRESS DID NOT INTEND FOR TERMINATIONS OF REMOVAL PROCEEDINGS TO PRECLUDE CITIZENSHIP DENIALS.**

As a threshold point, the question of whether collateral estoppel applies "must be answered by reference to the enabling statute." *Duvall v. Attorney General*, 436 F.3d 382, 386-87 (3d Cir. 2006) *citing Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). It is not the prerogative of federal courts to impose upon administrative agencies procedural doctrines or rules of decision, whatever their historical pedigree. *Duvall*, 436 F.3d at 386. Congress has discretion, based on its own weighing of policy goals to prescribe the procedures by which an agency will perform its work and render decisions. *Astoria*, 501 U.S. at 108. The only constraint on this authority is the Constitution, embodied primarily in the requirement of "due process." *Duvall*, 436 F.3d at 386 (collateral estoppel is not constitutionally mandated therefore the question of whether an agency must apply the doctrine turns on the enabling statute).

The doctrine of collateral estoppel is not explicitly prescribed in the Immigration and Nationality Act ("INA"). *Duvall*, 436 F.3d at 387. "Nowhere does the Act use the phrase collateral estoppel, res judicata, issue preclusion, or claim preclusion, and nowhere does the Act expressly bar the agency from relitigating issues previously decided." *Id*. (internal quotations

---

³ A *de novo* hearing "is conducted as if an original hearing had not taken place." BLACK'S LAW DICTIONARY 738 (8th ed. 2004); s*ee also Chaly-Garcia v. United States*, 508 F.3d 1201, 1204 (9th Cir. 2007) (defining hearing *de novo* as requiring a new hearing as if previous adjudication had not occurred).

omitted). While Congress is expected to legislate against a backdrop of well-established common law principles – and collateral estoppel has been recognized by the Supreme Court as one of those well-established principles – common law doctrines should not be implied in a statutory scheme in the absence of express authorization. *Id. citing Astoria*, 501 U.S. at 108. Nor should they be applied if application of the doctrine is inconsistent with the structure and purpose of the statute. *Id*.

Precluding USCIS from defending citizenship denials based on adverse immigration judge decisions would frustrate the intent of Congress to keep removal proceedings and citizenship determinations separate.[4] Indeed, in the context of naturalization, Congress has stated explicitly that the findings of the Board of Immigration Appeals ("BIA") or an immigration judge in terminating removal proceedings do not have any effect on the question of whether USCIS should grant citizenship. Specifically, 8 U.S.C. § 1429 provides:

> No application for naturalization shall be considered by the Attorney General if there is pending against the application a removal proceeding . . . *Provided*, That the findings of the Attorney General in terminating removal proceedings or in cancelling the removal of an alien pursuant to the provisions of this chapter, ***shall not be deemed binding on any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this subchapter.***

8 U.S.C. § 1429 (emphasis added).[5] Consistent with section 1429, several district courts have noted that neither the BIA nor immigration judges have any authority with respect to

---

[4] In this case, the Seventh Circuit implicitly recognized that removal proceedings and citizenship claims pursuant to 8 U.S.C. § 1503(a) are separate matters. *Ortega v. Holder, et al.*, 592 F.3d 738, 745-46 (7th Cir. 2010).

[5] As of March 1, 2003, the INS ceased to exist as an independent agency within the United States Department of Justice, and its functions respecting the adjudication of aliens' applications for immigration benefits – such as the application for a certificate of citizenship at issue in this case – were assumed by USCIS, within the Department of Homeland Security, and ICE now handles all immigration enforcement actions, such as removal proceedings. *See* Homeland Security Act of 2002, Pub. L. 107-296, §§ 441, 451, 471(a), 116 Stat. 2135, 2205 (Nov. 25, 2002); 68 Fed. Reg. 10922-01, 2003 WL 735330 (Mar. 6, 2003); *see also Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

naturalization applications. *See e.g., Anderson v. Gonzales*, 497 F.3d 927, 933 (9th Cir. 2007); *Cuong Quang v. McNamee*, 2006 WL 3004524, at *7 (D. Or. 2006); *cf. Sandoval-Valenzuela v. Gonzales*, 2008 WL 3916030, at *3 (N.D. Cal. 2008). Indeed, the BIA itself has held that "neither the Board nor the immigration judges have jurisdiction to determine an alien's eligibility for naturalization. . . . We do not have authority to compel the DHS to acknowledge [a] respondent's eligibility for naturalization." *In re Hildago*, 24 I. & N. Dec. 103, 105-06 (BIA 2007).[6] Additionally, even if USCIS makes a recommendation to the immigration judge regarding an applicant's *prima facie* eligibility for naturalization, it is not bound to its own recommendation.[7] *See e.g., Escobar v. Gonzales*, 2007 WL 281657, at *7 (D. Or. 2007) (holding that USCIS was not bound by its own recommendation to the BIA regarding alien's *prima facie* eligibility for naturalization); *Cuong Quang*, at *7 (same).

By implication, Congress must have intended that the findings of an immigration judge terminating removal proceedings should have no effect on citizenship determinations by USCIS. There is no logical reason why Congress would have intended to shield naturalization determinations from findings in removal proceedings and not also the adjudication of citizenship claims. It seems clear that Congress, which entrusted removal proceedings and citizenship determinations to different subagencies, sought to avoid any spillover between the results of removal and citizenship proceedings regardless of whether the applicant was seeking

---

[6] The determination by the BIA that it lacks jurisdiction over citizenship determinations and cannot compel USCIS to acknowledge an alien's eligibility for citizenship is entitled to *Chevron* deference. *See Chevron v. Naturalization Resources Defense Counsel*, 467 U.S. 837 (1984). Thus, even if Congress had not spoken directly to the precise question at issue, the agency's interpretation of section 1429 is entitled to deference as a permissible construction of the statute. *Chevron*, 467 U.S. 842-843. The agency's determination that immigration judges do not have jurisdiction or authority to declare that an alien is a U.S. citizen is also entitled to *Chevron* deference.

[7] In cases involving "exceptionally appealing humanitarian factors," an immigration judge may terminate removal proceedings in order to allow an to apply for naturalization. 8 C.F.R. § 1239.2(f). In such a case, USCIS may be called upon to state whether the alien is *prima facie* eligible for naturalization. *Id*. However, as noted above, the BIA and several district courts have held that even a recommendation by USCIS that an alien is *prima facie* eligible for naturalization is not binding upon USCIS in any way.

naturalization or asserting a claim to citizenship. *Cf. Mobin v. Taylor*, 598 F. Supp. 2d 777, 784 (E.D. Va. 2009) (explaining the fundamental difference between removal and citizenship determinations).

The government concedes that, in cases cited by Ortega, several courts have applied collateral estoppel to findings in removal proceedings. *See e.g., Ramon-Sepulveda v. INS*, 824 F.2d 749 (9th Cir. 1987) (failure of proof of alienage in removal proceedings collateral estopped INS from relitigating issue in subsequent removal proceedings); *Medina v. INS*, 993 F.2d 499 (5th Cir. 1993) (collateral estoppel precludes relitigation of individual's citizenship in removal proceedings where issue was conceded by the former INS during prior exclusion proceedings); *cf. Hamdan v. Gonzales*, 425 F.3d 1051, 1059-60 (7th Cir. 2005) (declining to apply *res judicata*, but noting that doctrine does apply to immigration proceedings). However, none of these cases specifically holds that the findings of an immigration judge bind USCIS in adjudicating citizenship claims. *Medina* and *Ramon-Sepulveda* only concern whether an immigration judge's findings were preclusive in subsequent removal proceedings. *Medina,* 993 F.2d at 500-02; *Ramon-Sepulveda,* 824 F.2d at 750. Ortega points to no authority which permits findings in removal proceedings to control in citizenship determinations. As such, the Court should decline Ortega's invitation to extend the doctrine here.

### III. PLAINTIFF HAS NOT MET HER BURDEN OF PROVING THE ELEMENTS OF COLLATERAL ESTOPPEL.

Even if the doctrine of collateral estoppel applies in this case, Oretga has failed to show that she meets the requisite elements. Collateral estoppel only applies where: "(1) the issue that one side seeks to preclude is identical to an issue involved in a prior action; (2) the issue was actually litigated in the prior action; (3) determination of the issue was essential to final judgment in the prior action; and (4) the party precluded from relitigating the issue was represented in the

prior action." *Love v. Cook County*, 82 F. Supp. 2d 911, 916 (N.D. Ill. 2000) *citing La Preferida, Inc. v. Cerveceria Modelo*, 914 F.2d 900, 906 (7th Cir. 1990); *Myer v. Ringdon*, 36 F.3d 1375, 1379-80 (7th Cir. 1994) (same factors apply to giving preclusive effect to administrative agency decisions). Moreover, the Seventh Circuit only gives a collateral estoppel effect to judgments that are issued by an agency acting in a judicial capacity. *Reed v. Amax Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992). An agency acts in a judicial capacity when it provides the following safeguards: "(1) representation by counsel; (2) pretrial discovery; (3) the opportunity to present memoranda of law; (4) examinations and cross examinations at the hearing; (5) the opportunity to introduce exhibits; (6) the chance to object to evidence at the hearing; and (7) final findings of fact and conclusions of law." *Reed*, 971 F.3d at 1300 *citing Buckhalter v. Pepsi-Cola Gen. Bottlers*, 820 F.2d 892, 896 (7th Cir. 1987).[8]

### A. The Issues Of Ortega's Citizenship Was Not Actually Litigated, Determined, And Necessary To The Decision In Her Removal Proceedings.

#### 1. The Legal Standards Are Different, And The Burdens Of Proof And Persuasion Shifted.

Issues of fact are not identical if the legal standards governing their resolution are significantly different, even if the factually setting of both suits is the same. *Metromedia Co. v. Fugazy*, 983 F.2d 350, 365 (2d Cir. 1992); *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971); *Moore's Federal Practice - Civil* § 132.02[4] (2010). As such, issue preclusion may be defeated by shifts in the burden of persuasion or by changes in the degree of persuasion required to prevail. *Kunzelman v. Thompson*, 799 F.2d 1172 (7th Cir. 1986); *Geunther v.*

---

[8] In addition, the "offensive" use of collateral estoppel occurs where, as here, a plaintiff seeks to rely on a previous judgment or ruling against the defendant. But the Supreme Court has indicated that application of offensive collateral estoppel is inappropriate where there would be unfairness to the defendant because (1) the defendant had no strong incentive to litigate the prior matter, or (2) the prior judgment was inconsistent with other previous judgments in favor of the defendant, or (3) the two proceedings have different procedural mechanisms which would make the first proceeding more advantageous to the plaintiff. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330-31 (1979).

*Holmbreen*, 738 F.2d 879, 888-89 (7th Cir. 1984). In addition, "the failure to carry a higher standard of proof does not preclude a subsequent attempt to satisfy a lower standard." *Guenther*, 738 F.2d at 887 *citing One Lot Emerald Cut Stones v. U.S.*, 409 U.S. 232, 235 (1972) (government's failure to prove an issue beyond a reasonable doubt in a criminal prosecution does not preclude a subsequent attempt to prove the same issue by preponderance of the evidence in a civil action); *Freeman v. Office of Workers' Compensation Program*, 20 F.3d 289, 294 (7th Cir. 1994) ("collateral estoppel should not apply where the party against whom preclusion is sought faced a heavier burden of persuasion in the first action compared with the second."). The same principle applies where the allocation of the burden is different in the two actions. *Freeman*, 20 F.3d at 294; *Ferrell v. Pierce*, 785 F.2d 1372, 1378 n.2 (7th Cir. 1986).

    Ortega's removal proceedings and her district court action involve different legal standards and different burdens of proof and persuasion. The legal standard in Ortega's removal proceedings was whether or not Ortega was an alien that was convicted of an aggravated felony. (SOF at ¶ 16). Alienage is a "jurisdictional fact," which the government must prove before an immigration judge may issue an order authorizing removal. 8 U.S.C. § 1229a(c)(1)(A); 8 C.F.R. § 1240.8. Moreover, the government bears the burden of proving alienage, along with all other facts relevant to removal, by "clear and convincing" evidence. 8 U.S.C. § 1229a(c)(3)(A); *Woodby v. INS*, 385 U.S. 276, 286 (1966). By contrast, Ortega now bears the burden of proving her claim of derivative citizenship in this case by a preponderance of evidence. *Patel v. Rice*, 403 F. Supp. 2d 560, 562 (N.D. Tex. 2005) ("The plaintiff bears burden of establishing, by a preponderance of the evidence, that he is a United States national."); *Rivera v. Albright*, No. 99-

328, 2000 WL 1514075, at *1 (N.D. Ill. 2000). This shift in burdens constitutes a significant change in legal standard, which precludes the application of collateral estoppel in this case.[9]

### 2. Immigration Judges Do Not Have Authority To Declare Citizenship.

Contrary to Ortega's assertion, the immigration judge in her case did not conclusively determine her citizenship status and he did not adjudicate her citizenship claim. Rather, the immigration judge merely accepted Ortega's defense of citizenship. *See Rios-Valenzuela v. Dep't of Homeland Sec.*, 506 F.3d 393, 396-97 (5th Cir. 2007) ("if the immigration judge accepts the citizenship defense, she terminates the removal proceedings without deciding citizenship"). Immigration judges do not have jurisdiction or authority to declare that an alien is a U.S. citizen. Only USCIS and district courts are authorized to made citizenship determinations.[10] In fact, immigration judges are only empowered to determine whether an alien is inadmissible or deportable. *See* 8 U.S.C. § 1229a(a)(1) ("immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien"); 8 U.S.C. § 1229a(c)(1)(A) ("At the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States."); *see also* 8 C.F.R. § 1240.1(a)(1) ("In any removal proceedings . . . the immigration judge shall have the authority to . . . determine removability . . . [inadmissibility] . . . withholding of removal . . ." and take actions consistent with these duties); 8 C.F.R. § 1240.12(a)

---

[9] Whereas the legal standard in Ortega's removal proceedings was proof of alienage and felony conviction, the issue in this proceeding is whether Ortega derived citizenship. Whereas the government had the burden of proof in Ortega's removal proceedings, Ortega now bears the burden herself. Whereas the burden of persuasion in Ortega's removal proceedings was "clear and convincing evidence," Ortega must prove her claim to citizenship by a "preponderance of the evidence." In contrast to Ortega's removal proceedings, the government need only raise a probability that Ortega's parents were not common law married in order to prevail in this action. Because the allocation of burden and degree of persuasion is different in the instant case, Ortega's removal proceedings should not preclude the government from defending this case on its merits. *Kunzelman*, 799 F.2d at 1172; *Freeman*, 20 F.3d at 294.

[10] Even in the context of an order of removal, the INA explicitly places the determination of nationality claims in the hands of the courts. *Lopez v. Holder*, 563 F.3d 107, 110 (5th Cir. 2009). Thus, a court of appeals is directed to conduct a *de novo* determination, based on the record, of an alien's claim of nationality. *Lopez*, 563 F.3d at 107. If the record presents genuine issues of material fact, the court of appeals must transfer the case to a district court for a *de novo* hearing. *Id.*; 8 U.S.C. § 1252(b)(5)(B); *see also* 8 U.S.C. § 1452; 8 C.F.R. §§ 341.1-341.2 (empowering USCIS to adjudicate applications for certificate of citizenship).

("decision of immigration judge shall include a finding as to inadmissibility or deportability"); C.F.R. § 1240.12(c) ("order of immigration judge shall direct the respondent's removal from the United States, or the termination of the proceedings. . . ."). The only finding the immigration judge was legally authorized to make in Ortega's removal proceedings was whether the government had met its burden of proving her alienage by clear and convincing evidence. *Id*. Therefore, any declaration of Ortega's citizenship by the immigration judge was *ultra vires*, and Ortega cannot rely upon his findings in this case. *Id*.; *Moore's Federal Practice-Civil* § 132.03 [4][k][v] (2010) (dicta not subject to issue preclusion).

### 3. Ortega's Removal Proceedings And This Case Involve Different Procedural Mechanisms.

Contrary to Ortega's assertion, removal proceedings and trial *de novo* in federal district court have vastly different procedural mechanisms. For instance, the Federal Rules of Evidence do not apply to removal proceedings. *See Matter of Wadud*, 19 I & N Dec. 182 (BIA 1984) ("immigration proceedings are not bound by the strict rules of evidence"); *see also Baliza v. INS*, 709 F.2d 1231 (9th Cir. 1983); *Dallo v. INS*, 765 F.2d 581 (6th Cir. 1985); *Longoria-Castaneda v. INS*, 548 F.2d 233 (8th Cir. 1977). Relevance and fundamental fairness are the only bars to admissibility of evidence in deportation cases. *Matter of Ponce-Hernandez*, 22 I & N Dec. 784 (BIA 1999); *Matter of Toro*, 17 I & N Dec. 340 (BIA 1980). In addition, there is no right to pretrial discovery in removal proceedings. *Matter of Khalifah*, 21 I & N Dec. 107, 112 (BIA 1995) ("there is no right to discovery in deportation proceedings"); *Matter of Demjanjuk*, 2006 WL 3922265 (BIA 2006) ("no provision for discover in the course of removal proceedings"). Indeed, Ortega's last minute submission of a merits brief, five minutes prior to the commencement of her removal hearing, is something that would never be tolerated in federal

district court. *See* MSJ Exhibit 9 at p. 11. Because different procedural mechanisms apply, collateral estoppel in not appropriate in this case.[11]

## B. There Are Good Reasons Not To Apply The Doctrine In This Case.

"Courts and commentators have consistently recognized that collateral estoppel was borne of equity and is therefore flexible, bending to satisfy its underlying purpose in light of the nature of the proceedings." *Duvall*, 436 F.3d at 390. In other words, "although collateral estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Id*. at 391 *citing Astoria*, 501 U.S. at 110. The flexibility of the doctrine is recognized in several exceptions. *See Duvall*, 436 F.3d at 391. For instance, collateral estoppel will not preclude relitigation of the issue "when there is substantial difference in the procedures employed by the prior and current tribunals, a material intervening change in governing law or the burden of persuasion, or a clear and convincing need for a new determination of the issue . . . because of the potential adverse impact of the determination on the public interest." *Id. citing* Restatement (Second) of Judgment §§ 28, 83. In addition, collateral estoppel in the administrative context "must be informed by considerations of agency structure and legislative policy." *Kairys v. INS*, 981 F.2d 937, 939-41 (7th Cir. 1992) ("Like all legal doctrines, collateral estoppel has bounds. It does not preclude relitigation in all cases. It is not applied if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."); *Moore's Federal Practice-*

---

[11] In addition, the record of Ortega's removal proceedings is incomplete. The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment. *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992). "It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated. *Clark*, 966 F.2d at 1321; *Welch v. Johnson*, 907 F.2d 714, 720 (7th Cir. 1990). The record does not contain the findings of fact or conclusions of law of the immigration judge. While Ortega has produced a partial transcript of her proceedings, the final ruling of the immigration judge is absent. *See* MSJ Exhibit 9 at p. 61. The only indication of the immigration judge's finding is the order whereupon the immigration judge terminated the proceedings. *See* MSJ Exhibit 10. This order is not enough to determine the exact findings of fact of the immigration judge; therefore, they should not be accorded a preclusive effect.

*Civil* § 12.30[e] (3d ed. 2001); Charles H. Koch, Jr., *Administrative Law and Practice* § 5.72[1] (2d ed. 1997).

The interests of justice are best served by proceeding to trial *de novo* in this case. Before declaring Ortega a citizen, this Court should be certain of her eligibility for derivative citizenship. The only way to be certain that Ortega qualifies for derivative citizenship is to conduct a *de novo* trial in this matter.

Ortega's citizenship is significant matter because Ortega has a serious criminal history. In July 2001, Ortega was convicted or robbery in Illinois, and sentenced to three years imprisonment. (SOF at ¶ 32). In October 2005, she was convicted of fraud, and sentenced to thirty days imprisonment and three years probation. (SOF at ¶ 33). In February 2010, Ortega was charged with firearms related offenses, in connection with the trafficking of .40 caliber Glock pistols to Chicago street gangs. (SOF at ¶ 34). Ortega was initially released from detention on conditions, but taken back into federal custody after repeatedly violating the conditions of her release, and notwithstanding admonishment by the Court to discontinue her use of heroin. (SOF at ¶ 35) (order finding Ortega danger to community and flight risk). Given Ortega's criminal history – in combination with clear Congressional intent to bifurcate removal and citizenship matters, and due consideration of the procedural differences between removal proceedings and citizenship determinations – this Court should exercise its discretion not to apply collateral estoppel. *See Duvall*, 436 F.3d at 391 ("Legislative policy dictates that the bar against relitigation must drop when the alien continues to commit criminal acts after initial immigration proceedings.").

Finally, this Court should not declare Ortega a citizen by collateral estoppel. It is well-established that a person cannot acquire citizenship by operation of collateral estoppel. In *INS v. Pangilinan*, 486 U.S. 875, 882 (1988) the Supreme Court recognized Congress's exclusive

constitutional authority over citizenship determinations. As a result of this exclusive power, an alien can become a citizen "only upon terms and conditions specified by Congress." *Id.* at 884. In *Pangilinan*, the Supreme Court made clear that "the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers." *Id.* at 883-84. Since Congress set specific statutory limits on citizenship determinations, "[n]either by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations." *Id.* at 885; *Miller v. Albright*, 5223 US. 420, 424 (1998) (citizenship for one not born in the United States may be acquired "only as provided by Acts of Congress."); *Mustanich v. Mukasey*, 518 F.3d 1084, 1089 (9th Cir. 2008) ("[t]he rule in *Pangilinan* cannot be avoided where the immediate and necessary consequence of the requested equitable relief is the conferral of citizenship."). Because the Court cannot use its equitable powers to grant citizenship, Ortega cannot obtain a declaration in this case by collateral estoppel, and her motion for summary judgment must therefore be dismissed.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that this Court deny Plaintiff's motion for summary judgment and set this matter for *de novo* trial.

| | |
|---|---|
| Dated: August 30, 2010 | Respectfully submitted, |
| PATRICK J. FITZGERALD<br>United States Attorney | TONY WEST<br>Assistant Attorney General |
| SHEILA MCNULTY<br>Assistant U.S. Attorney<br>219 South Dearborn Street<br>Chicago, Illinois 60604<br>(312) 353-8788 | ELIZABETH J. STEVENS<br>Assistant Director, District Court Section<br><br>**s/ Christopher W. Dempsey**<br>CHRISTOPHER W. DEMPSEY<br>Senior Litigation Counsel<br>District Court Section<br>Office of Immigration Litigation |

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2010, I served the foregoing document by electronic mail and First-Class U.S. Mail, postage-prepaid to:

James A. Morsch
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, IL  60602-4257
jmorsch@butlerrubin.com

John Ganz
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, IL  60602-4257
jganz@butlerrubin.com

**s/ Christopher W. Dempsey**
CHRISTOPHER W. DEMPSEY
Senior Litigation Counsel
District Court Section
Office of Immigration Litigation