IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGIE ORTEGA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | No. 08 CV 1121 |
| ) | |
| ERIC H. HOLDER, Attorney General ) | Judge Blanche M. Manning |
| of the United States, et al, ) | |
| ) | Magistrate Judge Michael T. Mason |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
HER MOTION FOR SUMMARY JUDGMENT**

Plaintiff Angie Ortega replies in support of her Motion for Summary Judgment as follows:

## I. INTRODUCTION

At its heart, Defendants' response relies on a mischaracterization of the Immigration Judge's ruling and the burdens of proof in the 2003 removal proceeding which forms the basis of Plaintiff's Motion. While Defendants challenge the propriety of the Immigration Judge's ruling, they omit the fact that they could have, but did not, appeal that ruling as part of the removal process. Defendants raise other arguments, but none of those are relevant to the central issue before this Court: whether collateral estoppel should apply to spare Plaintiff from having to re-try an issue which the parties to this action tried in a 2002 removal hearing. Contrary to Defendants' arguments, the doctrine of collateral estoppel applies to both immigration proceedings in general and Plaintiff's case in particular. It applies because the same parties fully and fairly litigated the same factual issue—Plaintiff's United States citizenship as established through her American father's common law marriage to her mother—in an administrative agency proceeding which was judicial in nature and which contained the procedural safeguards

necessary for the doctrine to apply. Additionally, Plaintiff met the same burden of proof in the removal hearing in proving her U.S. citizenship as she faces here in District Court. As a matter of both fairness to Plaintiff and judicial economy, the District Court should reject Defendants' arguments and grant Plaintiff's motion.

## II. ARGUMENT

### A. DEFENDANTS FAIL TO PROPERLY DISPUTE PLAINTIFF'S MATERIAL FACTS.

#### 1. DEFENDANTS MISCHARACTERIZE THE IMMIGRATION JUDGE'S RULING.

Plaintiff's Local Rule 56.1 Statement of Material Facts asserts twenty-three material facts. Defendants substantively challenge only two of those facts. Defendants, however, misrepresent the Immigration Judge's ruling—the decision lying at the heart of this motion—in making those two challenges.

The government in 2002 attempted to deport Plaintiff through a removal hearing conducted before an Immigration Judge. Plaintiff in ¶ 14 and ¶ 20 of her Statement of Material Facts asserts that the Immigration Judge found that Plaintiff is a United States Citizen. *See* Plaintiff's Statement of Material Fact ¶¶ 14, 20.

In challenging Plaintiff's Statement of Material Fact 14, Defendants "aver that the Immigration Judge did not find that Ortega is a United States Citizen. Rather," Defendants aver, the Immigration Judge "terminated Ortega's removal proceedings after finding that the government did not meet its burden of proving alienage by clear and convincing evidence." Defendants' Response to Plaintiff's Statement of Material Facts ¶ 14. Similarly, responding to Plaintiff's Statement of Material Fact ¶ 20, Defendants "aver that the Immigration Judge terminated Ortega's removal proceedings based on Ortega's defense of citizenship, but made no

2

findings of declaration as to Ortega's citizenship status." Defendants' Response to Plaintiff's Statement of Material Facts ¶ 20. The Court should disregard Defendants' response to ¶ 14 and ¶ 20 for two reasons.

First, Defendants' "averments" fail to meet the requirements of Local Rule 56.1. Under the Rule, a party opposing a motion for summary judgment must provide "a response to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, or other supporting materials relied upon." L. R. 56.1(b)(3)(B). Defendants provide no such evidentiary support for their contentions, making their responses procedurally deficient. The facts in ¶ 14 and ¶ 20 are therefore deemed admitted. *See Smith v. Lanz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). *See also Martino v. Kraft Foods, Inc.*, 04 C 2870, 2005 WL 1651195, at *12 (N.D. Ill. July 5, 2005) ("A nonmovant's statement of facts must 'cite specific evidentiary materials' that justify the nonmovant's denial of a movant's factual allegation.") (internal citations omitted).

Second, Defendants' averments are factually wrong. Plaintiff agrees that the Immigration Judge terminated the removal proceeding Defendants brought against Plaintiff. *See* Plaintiff's Statement of Material Facts Exhibit 11 (indicating that "Proceedings were terminated."). The Immigration Judge, however, did so based on a specific finding that the evidence Plaintiff presented at the contested hearing "established that she acquired U.S. citizenship through her U.S.C. [U.S. Citizen] father Alfredo Ortega pursuant to [Section] 301(g) of the INA." *Id.* The text of the Immigration Judge's finding thus contradicts Defendants' assertions. The incorrect nature of Defendants' assertion is especially clear given that the

Judge's finding is silent as to whether the Government met its burden: rather than saying the Government failed to meet its burden, the Judge instead phrased his Order in terms of a finding which was based on Plaintiff's defense that, despite her birth outside the United States, she is a U.S. citizen.

### 2. DEFENDANTS ATTEMPT TO INTRODUCE NEW EVIDENCE PROHIBITED UNDER THE DOCTRINE OF COLLATERAL ESTOPPEL.

Plaintiff here moves for summary judgment based on the doctrine of collateral estoppel. The District Court's inquiry is thus limited to whether the elements of the doctrine are met. Those elements are: (1) that the issue the proponent seeks to preclude is identical to an issue involved in the prior action; (2) the issue was actually litigated in the prior action; (3) determination of the issue was essential to final judgment in the prior action; and (4) the party precluded from re-litigating the issue was represented in the prior action. *Love v. Cook County*, 82 F.Supp.2d 911, 916 (N.D. Ill. 2000).

Defendants' Statement of Additional Facts seeks to introduce new evidence in the form of transcripts of the depositions of Plaintiff's mother and paternal grandmother as a means of creating issues of material fact. *See* Response to Plaintiff's Statement of Material Facts and Statement of Additional Facts at 3, ¶¶ 24-31 and Defendants' Amended Opposition To Plaintiff's Motion For Summary Judgment at 4 (purporting to list material facts which the parties dispute). Defendants may not do so.

New factual assertions cannot be raised in a second action which were "relevant to the issues that were litigated and adjudicated previously, [if] the prior determination of the issue is conclusive on the issue despite the fact that new evidence or argument relevant to the issue was not in fact expressly pleaded, introduced into evidence, or otherwise urged." 18 Moore's Federal Practice, § 132.02[2][c] (Matthew Bender 3d Ed.). Defendant's purported "additional facts"

4

relate to many of the same issues about which the two witnesses testified at the removal hearing, and about which Defendants cross-examined—or could have cross-examined—them. *See* Plaintiff's Local Rule 56.1 Statement of Material Facts Exhibit 9 at 16-33 (Testimony of Guadalupe Hickey, mother of Plaintiff) and 33-55 (Testimony of Julia Ortega, Plaintiff's Paternal Grandmother). Defendants are thus estopped from asserting the "additional facts" in question and the related underlying exhibits. Moreover, Defendants are not moving for summary judgment. As such, these "facts" are not material to the issue of whether collateral estoppel entitles *Plaintiff* to summary judgment.

Alternatively, a party may avoid collateral estoppel based on new evidence if it demonstrates that 1) "newly discovered evidence was essential to a proper decision in the prior action" and 2) that the party was "in no way responsible for the lack of such evidence in the prior action." *Cent. States, Se. and Sw. Areas Pension Fund v. Central Transp. Co., Inc.*, 962 F.Supp. 122, 123 (N.D. Ill. 1997). Both of the deponents, in fact, testified at trial consistent with their deposition testimony, and the government had an opportunity to cross-examine them at that time. The government offers no explanation as to why any of the evidence it now seeks to introduce qualifies as "newly discovered," nor why it should not be held responsible for any gaps in the record before the Immigration Judge. And while Federal law allows parties to removal proceedings to seek subpoenas for depositions and documents, *see* 8 C.F.R. 1003.35, there is no evidence in the record before the Court indicating that Defendants ever sought to avail themselves of this opportunity prior to the removal hearing. In short, this attempt to re-litigate the matter already decided by an Immigration Judge would only be appropriate if collateral estoppel were rejected—which is the subject of Plaintiff's motion.

There are no genuine issues of material fact that are in dispute in connection with this Motion. The only question presented, then, is whether Plaintiff is entitled to summary judgment as a matter of law.

### B. THE IMMIGRATION JUDGE ACTED PROPERLY IN FINDING THAT PLAINTIFF ESTABLISHED HER UNITED STATES CITIZENSHIP. DEFENDANTS' FAILURE TO APPEAL THE IMMIGRATION JUDGE'S RULING UNDERMINES THEIR CLAIMS REGARDING THE RULING'S SCOPE OR IMPACT IN THIS CASE.

Defendants argue that in finding that Plaintiff established her U.S. citizenship, the Immigration Judge somehow acted improperly. *See* Defendants' Amended Opposition To Plaintiff's Amended Motion for Summary Judgment at 12 ("The only finding the immigration judge was legally authorized to make in Ortega's removal proceedings was whether the government had met its burden of proving alienage by clear and convincing evidence.... Therefore, any declaration of Ortega's citizenship by the immigration judge was *ultra vires*."). By extension, Defendants implicitly argue that the Immigration Judge's Order cannot form the basis for Plaintiff's Motion for Summary Judgment based on collateral estoppel.

The Immigration Judge's finding of fact and conclusion of law was, in fact, fully consistent with applicable governing regulations. Those regulations require that "[t]he decision of the immigration judge ... include a finding as to inadmissibility or deportability" and "shall also contain reasons for granting or denying the request." 8 C.F.R. § 1240.12(a). The Immigration Judge here made factual and legal findings based on the evidence Plaintiff presented, and based on his finding that Plaintiff acquired U.S. citizenship through her father, terminated the removal proceeding against Plaintiff.

A party who disagrees with an Immigration Judge's ruling may appeal that ruling to the Board of Immigration Appeals. *See* 8 § C.F.R. 1003.3, 8 C.F.R. § 1003.38. Despite having this

opportunity, and despite the Immigration Judge's allegedly improper actions, Defendants failed to take such an appeal. *See* Plaintiff's Local Rule 56.1 Statement of Material Facts ¶ 22 and Defendants' Response to Plaintiff's Statement of Material Facts at ¶ 22. The Government's inaction means that the Immigration Judge's decision is final. *See* 8 C.F.R. § 1003.39. Defendants' brief neither mentions their failure to appeal, nor explains the reasons for their inaction.

To the extent Plaintiff seeks to make this finding binding upon the District Court through application of collateral estoppel, then, she is able to do so in substantial part because of Defendants' conscious inaction. As a matter of equity, Defendants cannot now complain of any potential fallout from the Immigration Judge's supposedly inappropriate actions given that they failed to appeal the decision. Equitable concerns lie at the heart of the doctrine of Collateral Estoppel. *See Thompson v. Mueller*, 976 F.Supp 762, 765 (N.D. Ill. 1997) (stating that "collateral estoppel is an equitable doctrine" which should be applied "as fairness and justice require.") (internal citation and quotations omitted). These equitable considerations offer a compelling reason why the Court should enter summary judgment in Plaintiff's favor.

### C. COLLATERAL ESTOPPEL APPLIES TO IMMIGRATION PROCEEDINGS AND, BY EXTENSION, TO CITIZENSHIP DETERMINATIONS BY THE DISTRICT COURT.

Defendants essentially argue that Immigration Judges lack authority to grant a party citizenship and, thus, any findings such Judges make in removal proceeding terminations should have no later effect on citizenship determinations. Defendants' fail to provide any regulatory, statutory or case law on-point authority to support their sweeping contention that "Congress must have intended that the findings of an immigration judge terminating removal hearing should have *no* effect on citizenship determinations by USCIS." Defendants' Amended Opposition at 7

(emphasis added). Ultimately, Defendants' argument misses the point of this Motion: the question before the Court is not the extent of the Immigration Judge's authority, but whether collateral estoppel applies to bar relitigation in the District Court of the facts underlying Plaintiff's claim for citizenship. The issue before the Court is fundamentally procedural: was the Immigration Judge's factual finding regarding Plaintiff's citizenship arrived at through procedures which met the standards governing the application of collateral estoppel?

### 1. COLLATERAL ESTOPPEL APPLIES TO IMMIGRATION PROCEEDINGS.

Defendants here seek a second trial in the District Court on the same factual issues which the same parties litigated in the Plaintiff's contested removal hearing. In support, Defendants note that the "doctrine of collateral estoppel is not explicitly prescribed by the Immigration and Naturalization Act." Opposition at 5. Defendants quote from the Third Circuit's holding in *Duvall* to support this position. Defendants, however, omit *Duvall's* crucial holding that the statute "will be read to incorporate collateral estoppel." *Duvall v. Att'y Gen'l of the U.S.*, 436 F.3d 382, 387-388 (3d Cir. 2006). This approach, the Appellate Court explained, was appropriate because "[a]n accepted common law doctrine should be implied in a statutory scheme, despite the absence of express authorization, if application of the doctrine is consistent with the structure and purpose of that scheme." *Id.* at 387. To the extent the Immigration and Naturalization Act provides an adversarial system under which litigants adjudicate removals, the statute is consistent with collateral estoppel. *Id.* at 388. Defendants' failure to address *Duvall's* holding in this respect is noteworthy. Indeed, the government has itself successfully used collateral estoppel *against* individuals in removal proceedings. See *Tittjung v. Reno*, 199 F.3d 393, 397 (7th Cir. 1999) and *Kairys v. I.N.S.*, 981 F.2d 937, 939 (7th Cir. 1992).

Defendants cite certain cases for the proposition that a party cannot obtain citizenship through estoppel. Amended Opposition at 14-15. These cases, however, are clearly distinguishable from Plaintiff's action because Plaintiff does not seek citizenship by estoppel, but instead through recognition of her already-existing citizenship. In *Pangilinan*, the aliens sought naturalization under a special statute enacted on behalf of Filipino nationals who served with American armed forces in World War II, but which expired over 40 years before they filed their lawsuit. *INS v. Pangilinan*, 486 U.S. 875, 877 (1988). There was no dispute in *Pangilinan* about present citizenship; the dispute was instead over whether the plaintiffs ought to be permitted an opportunity to naturalize. Similarly, in *Mustanich*, the alien missed a critical deadline for filing his application for naturalization, then based his claim on alleged bureaucratic inaction by citizenship agencies. *Mustanich v. Mukasey*, 518 F.3d 1084, 1086-1087 (9th Cir. 2008). Again, the Plaintiff raised no claim as to his present citizenship. Plaintiff here seeks summary judgment through collateral estoppel based on an adjudicatory finding arrived that she has been a citizen since birth, a decision arrived at through full, fair and timely litigation. She seeks here to vindicate that decision, which already prohibits removal actions against her. Additionally, unlike in *Pangilinan* and *Mustanich*, there are no issues in this case regarding expired statutes or missed procedural deadlines.

### 2. PLAINTIFF BORE A BURDEN OF PROOF IN THE REMOVAL PROCEEDING.

Defendants argue that the shift in the burden of proof from Defendants in the removal proceeding to Plaintiff in this declaratory judgment proceeding should defeat Plaintiff's Motion for Summary Judgment. *See* Amended Opposition 9-11. Defendants, however, omit a critical fact: under binding legal precedent, Plaintiff had to affirmatively prove her citizenship by a preponderance of the evidence to defeat the government's attempt to deport her.

9

Plaintiff was born in Mexico. *See* Plaintiff's Statement of Material Facts ¶ 6. Under a precedential decision of the Board of Immigration Appeals, a person subject to a removal proceeding who is born abroad "is presumed to be an alien and must go forward with the evidence to establish his claim to United States citizenship." *Matter of Tijerina-Villarreal*, 13 I&N Dec. 327, 330 (BIA 1969). To avoid deportation, the Board requires persons raising such claims to prove their citizenship by "a preponderance of credible evidence." *Id.* at 332.

Consistent with precedent, the Immigration Judge imposed this burden on Plaintiff at Plaintiff's removal hearing. Thus, notwithstanding the general rule that the government bears the burden of proving alienage by clear and convincing evidence, *Woodby v. I.N.S.*, 385 U.S. 276, 286 (1966), Plaintiff bore the burden of proof with respect to the precise question of her citizenship. As such, there would be no difference between her burden of proof in the removal proceeding and the burden she would bear in this Court at trial. This fact provides an additional basis upon which to apply collateral estoppel.

Defendants omit any discussion of these similarities in their Amended Opposition. To the extent any differences in burden of proof and allocation thereof do exist, those differences are also not dispositive since, according to the cases Defendants cite, such differences "may"—rather than must—defeat Plaintiff's attempt to assert collateral estoppel. *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir. 1986).

### 3. THE DE NOVO STANDARD IS IRRELEVANT.

Defendants also contend that because this proceeding is *de novo*, collateral estoppel cannot apply. Defendants, however, fail to cite any authority for the proposition that *de novo* review explicitly *prohibits* application of collateral estoppel. Indeed, such exclusion contravenes the doctrine's rationale in terms promoting judicial economy by preventing later, repetitive

litigation where—absent collateral estoppel—no deference would be given to a prior proceeding. Indeed, District Courts have, in fact, applied collateral estoppel to defeat claims brought in proceedings separate and distinct from the judgment upon which collateral estoppel is based. *See Kim v. Conagra Foods*, No. 01 C 2467, 2003 WL 1193322, at *1-2 (N.D. Ill. March 13, 2003) (granting summary judgment based on collateral estoppel to defendant in later patent action where court in separate case between plaintiff and different defendant found patent in issue to be invalid). Moreover, as explained above, Defendants waived their opportunity for *de novo* review by choosing not appealing the Immigration Judge's ruling to the Board of Immigration Appeals. Having foregone that opportunity, Defendants are not entitled to a second opportunity to re-litigate the judicially-determined fact of Plaintiff's citizenship.

### 4. THE PROCEDURAL DIFFERENCES BETWEEN COURT AND ADMINISTRATEVE LITIGATION IS IRRELEVANT.

Defendants stress that there are differences between the procedures governing removal hearings and actions in District Court. Defendants, however, fail to explain why these differences matter in the instant case in terms of the legitimacy of the Immigration Judge's decision. In other words, Defendants do not assert that their substantive rights were somehow impaired or otherwise diminished because of the differences in question. Defendants' silence in this regard is noteworthy given that "[m]ost administrative proceedings, while providing due process protections, do not follow the same procedures as do courts." *Czajkowski v. City of Chicago*, No. 90 C 3201, 1993 WL 11896, at *4 (N.D. Ill. Jan. 19, 1993). Not surprisingly, courts have applied collateral estoppel in diverse legal fields. *See, e.g., Bowen v. U.S.*, 570 F.2d 1311, 1320-1323 (7th Cir. 1978) (Federal Tort Claims Act plaintiff was collaterally estopped from denying contributory negligence based on prior ruling of National Transportation Safety Board). A mere difference in procedures, then, does not provide a basis to deny application of

11

collateral estoppel in a district court based on an earlier administrative decision absent evidence that the procedural differences prejudiced the party seeking to avoid application of the doctrine. Defendants point to no such prejudice here and, presumably, if they believed the Immigration Judge's finding of citizenship was caused by some procedural abnormality, they would have appealed the decision.

Defendants' arguments regarding the applicability of the Federal Rules of Evidence and related discovery rules to removal proceedings thus also lack merit, particularly given applicable statutory and regulatory provisions addressing these areas in removal proceedings. *See* 8 U.S.C. § 1229a(b)(4)(B) (giving aliens reasonable opportunity to examine evidence against them and to cross-examine witnesses); 8 C.F.R. § 1240.1(c) (permitting parties to object to the other party's submission of evidence); and 8 C.F.R. § 1003.35 (providing for subpoenas and depositions); *see also Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010) (collecting federal appellate holdings which require that when an alien wants to cross-examine a witness, "the agency not only must issue a subpoena but also must use reasonable efforts to enforce that subpoena" and granting alien's petition for review in part because of Immigration Judge's failure refusal to issue subpoena alien requested). Defendants, in other words, have "not pointed to any specific prejudice resulting from limitations on discovery." *Bowen v. U.S.*, 570 F.2d at 1322.

More basically, Defendants fail to point anything which the Immigration Judge or the applicable removal proceedings rules—rules Defendants themselves promulgated—precluded them from fully litigating the issue of Plaintiff's citizenship.[1] They do not point to anything

---

[1] Defendants criticize the late submission by Plaintiff's removal hearing attorney of a motion outlining her argument in defense of Plaintiff. *See* Defendant's Amended Opposition at 12-13. The transcript to which Defendants point, however, shows that the government's attorney failed to act on this supposedly late submission. *See* Plaintiff's Memorandum Of Law In Support of Motion For Summary Judgment, Exhibit 9 at 11-12. Moreover, the record indicates that the government had notice of Plaintiff's argument in an earlier filing. *Id.* Defendants' arguments are thus unavailing.

which provides "reason to doubt the quality, extensiveness, or fairness of procedures followed in the prior litigation." *Kairys v. I.N.S.*, 981 F.2d 937, 939-940 (internal quotations and citations omitted). This is not a case where a traffic court judge made a finding as to Plaintiff's citizenship, or where that issue was somehow an insignificant part of her removal hearing, but which now binds the government. *See Id.* The issue of Plaintiff's citizenship was the principal issue which the parties litigated before the Immigration Judge. Defendants' failure to identify how their case was prejudiced in the hearing before the Immigration Judge further supports application of collateral estoppel here because once a party receives a hearing on an issue that comports with due process, courts will, for purposes of collateral estoppel, question the fairness of the underlying proceeding in only limited circumstances. *See Avitia v. Metropolitan Club of Chicago*, 924 F.2d 689, 691 (7th Cir. 1991). *See also Bowen v. U.S.*, 570 F.2d at 1322 ("The question is ultimately one of fairness.")

Finally, Defendants seem to argue that Plaintiff is not entitled to the application of collateral estoppel because she has a criminal record. *See* Defendants' Amended Opposition at 14. A party's criminal background does not affect their access to collateral estoppel. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (collateral estoppel is "an established rule of criminal law") and *U.S. v. Bhatia*, No. CR 05-0334 SBA, 2007 WL 2554402, at *3 (N.D. Cal. Sept. 4, 2007) (criminal defendant may assert collateral estoppel as a defense under Fed. R. Crim. P. 12(b)(2)). Like any other litigant in similar circumstances, Plaintiff is not required to re-litigate an issue that has already been fully and fairly adjudicated on the merits.

## III. CONCLUSION

The parties fully and fairly litigated the issue of Plaintiff's citizenship in a contested removal hearing. Plaintiff, after presenting a detailed case, proved to the presiding Immigration

Judge by a preponderance of the evidence that she is a United States citizen. Defendants had, by virtue of the removal process, substantive opportunities to challenge Plaintiff's position at trial and later on administrative appeal, but skipped the latter opportunity. Defendants cannot now, based on a mischaracterization of the Immigration Judge's ruling and a mostly inferential argument, seek to force Plaintiff to re-litigate the same issue a second time here in the District Court.

In conclusion, Plaintiff respectfully requests that this Court: 1) hold that the doctrine of collateral estoppel bars further litigation of Plaintiff Angie Ortega's United States citizenship; 2) enter an order granting summary judgment in Plaintiff's favor; 3) issue a declaration stating that Plaintiff is a United States Citizen; 4) order the Bureau of U.S. Citizenship and Immigration Services to issue Plaintiff a certificate of citizenship no later than 30 days after entry of the Court's order; and 5) grant any other relief which the Court deems just and proper, including, but not limited to, an award of her attorney's fees and costs.

Respectfully submitted,

Dated September 2, 2010

John S. Ganz
One of the Attorneys for Angie Ortega

James A. Morsch (ARDC #6209558)
John S. Ganz (ARDC #6289542)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Suite 1800
Chicago, Illinois 60602-4257
PH: (312) 444-9660
FX: (312) 444-9702

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2010, I served the foregoing Reply In Support of Motion for Summary Judgment on the parties below via First Class United States Mail, postage pre-paid, at 70 West Madison Street, Chicago, Illinois:

>Christopher Dempsey (Christopher.Dempsey@usdoj.gov)
>United States Department of Justice
>Civil Division
>450 Fifth Street, N.W.
>Washington, DC 20044
>
>AUSA (USAILN.ECFAUSA.usdoj.gov)
>United States Attorney's Office
>219 South Dearborn Street, Suite 500
>Chicago, IL 60604

_____
John S. Ganz
One of the Attorneys for Plaintiff Angie Ortega

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which shall send notification to the following:

>Christopher Dempsey (Christopher.Dempsey@usdoj.gov)
>United States Department of Justice
>Civil Division
>450 Fifth Street, N.W.
>Washington, DC 20044
>
>AUSA (USAILN.ECFAUSA.usdoj.gov)
>United States Attorney's Office
>219 South Dearborn Street, Suite 500
>Chicago, IL 60604

/s/ John S. Ganz
One of the Attorneys for Plaintiff Angie Ortega