IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGIE ORTEGA,                )<br>    Plaintiff,    )<br>                              )<br>v.                            )<br>                              )<br>ERIC HOLDER, JR., Attorney General )<br>of the United States, and ALEJANDRO )<br>MAYORKAS, Director of the Bureau of )<br>U.S. Citizenship and Immigration )<br>Services,                     )<br>    Defendants.   ) | No. 08 C 1121<br>Judge Blanche M. Manning |

**MEMORANDUM AND ORDER**

  Plaintiff Angie Ortega has filed suit against Eric Holder, Attorney General of the United States, and Alejandro Mayorkas, Director of the Bureau of U.S. Citizenship and Immigration Services[1], seeking a declaration that she is a U.S. citizen.

  The court assumes familiarity with the facts of this case and its procedural history, but provides this brief background for context. This court granted the government's motion to dismiss on the ground that the court lacked jurisdiction based on certain language in the Immigration Nationality Act, 8 U.S.C. § 1503(a)(1). The Seventh Circuit concluded, as did this court, that because the "citizenship claim that Ms. Ortega pursued in her original application for a certificate of citizenship arose as a result of or in connection with her removal proceedings," the statute "prevents her from challenging the administrative denial of that application by way of a declaratory judgment action." *See Ortega v. Holder*, 592 F.3d 738, 746 (7th Cir. 2010). However, the Seventh Circuit noted that on its review of the administrative file, the plaintiff had filed a motion to reconsider or reopen after the Office of Administrative Appeals denied her appeal and "*after her removal proceedings had been terminated*." *Id.* (emphasis in original). Thus, the Seventh Circuit found that "this action . . . separated her administrative action from her prior removal proceedings and eliminated the jurisdictional bar to any court action created by way of § 1503(a)(1)." *Id.* It then remanded the case for further proceedings.

  The plaintiff has filed a motion for summary judgment on the ground that the issue of her U.S. citizenship was already determined at the removal hearing by the immigration judge ("IJ"). For the reasons stated below, the motion is granted.

---

  [1]The Immigration and Naturalization Service is predecessor to the Bureau of U.S. Citizenship and Immigration Services.

**Facts**

Ortega, who currently lives in Chicago, was born in Mexico. Her father was a United States citizen and her mother was a citizen of Mexico at the time Ortega was born. On September 25, 2001, the INS moved to deport Ortega. On May 7, 2002, an IJ convened a removal hearing to decide whether Ortega should be removed. At the conclusion of the removal hearing, the IJ found that Ortega "established that she acquired U.S. citizenship through her U.S.C. [United States citizen] father Alfredo Ortega pursuant to 301(g) of the" Immigration and Nationality Act. The IJ then terminated the removal proceeding, and the government did not appeal the IJ's decision.

During this period, Ortega applied to the INS for a Certificate of Citizenship on April 12, 2002. On April 24, 2002, the INS denied her application without interviewing her or holding a hearing. On May 6, 2002, Ortega appealed the INS' denial to the Office of Administrative Appeals ("AAO"), which denied the administrative appeal on February 28, 2003. On April 22, 2003, Ortega filed a motion with the AAO asking it to reconsider its February 28, 2003, denial of her administrative appeal. Over four years later, on August 17, 2007, the AAO denied her motion to reconsider, and the plaintiff filed the instant case "to obtain a binding declaration from the District Court that she is a United States citizen."

**Analysis**

Ortega moves for summary judgment on the ground that the earlier decision by the Immigration Judge constitutes collateral estoppel such that this court is bound by it. The government responds that the removal proceedings have no bearing on this case as judicial review in this matter is *de novo*. It further argues that collateral estoppel does not apply here and even if it did, the plaintiff has not satisfied the elements of collateral estoppel.

Before discussing the merits, the court notes that the government failed to properly respond to certain of the plaintiff's statements of fact. Specifically, under Local Rule 56.1 the party opposing summary judgment must provide a "response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). "An answer that does not deny the allegations in the numbered paragraph with citations to supporting evidence in the record constitutes an admission." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000)(citations and internal quotation marks omitted).

Here, while most of the facts are undisputed, the government attempts to state its disagreement with two of the plaintiff's statements of facts. Specifically, the plaintiff's statement of fact number 14 provides in relevant part that "Angie's motion [for reconsideration with the AAO] noted the Immigration Judge's finding that she is a United States citizen." The government responds that "Defendants do not dispute SOF ¶ 14, except to aver that the Immigration Judge did not find that Ortega is a United States citizen. Rather, he terminated Ortega's removal proceedings after finding that the government did not meet its burden of

proving alienage by clear and convincing evidence." However, the government does not point to any portion of the record in support of its statement that the IJ did not find Ortega is a U.S. citizen but instead terminated the removal proceedings after finding that the government did not meet its burden.

Similarly, the plaintiff's statement of fact number 20 states that "[a]t the conclusion of the removal hearing, the Immigration Judge found that Angie 'established that she acquired U.S. citizenship through her U.S.C. [United States Citizen] father Alfredo Ortega pursuant to 301(g) of the' Immigration and Nationality Act." The government responded that "Defendants do dispute SOF ¶ 20, except to aver that the Immigration Judge terminated Ortega's removal proceedings based on Ortega's defense of citizenship, but made no findings or declaration as to Ortega's citizenship status." While the government states that it does not dispute that the IJ stated that Ortega "established that she acquired U.S. citizenship through her U.S.C. [U.S. Citizen father]," it then contradictorily states that the IJ "made no findings or declaration as to Ortega's citizenship status."

Given that the government does not dispute the plaintiff's statements of fact paragraphs 14 and 20, they are admitted for purposes of this summary judgment motion.

A. Does the *de novo* standard of review preclude a finding of collateral estoppel?

The government first asserts that because 8 U.S.C. § 1503, the statute under which the plaintiff seeks relief, authorizes *de novo* review of an agency action, the plaintiff's removal proceedings "have no bearing on this case." Government's Opposition to Plaintiff's Motion for Summary Judgment at 4, Dkt. #61. The government goes on to argue, without citation to authority, that because the standard of review is *de novo*, the court owes no deference to the IJ's decision. But collateral estoppel is not about deference, it is about whether a particular issue was previously fully and fairly litigated such that it need not be considered again. Accordingly, the court rejects this argument.

B. Does collateral estoppel apply?

The government next contends that "the doctrine of collateral estoppel is not explicitly prescribed by the Immigration and Nationality Act" citing to *Duvall v. Atty. Gen'l of the United States*, 436 F.3d 382, 387-88 (3d Cir. 2006). However, as noted by the plaintiff, the *Duvall* court ultimately concluded that the INA "will be read to incorporate collateral estoppel." *Id*. at 387.

In a similar vein, the Seventh Circuit has explained that "[r]es judicata (as well as the related principle of collateral estoppel) applies to administrative proceedings such as the adjudication of petitions for relief in immigration courts." *Hamdan v. Gonzales*, 425 F.3d 1051, 1059 (7th Cir. 2005) (citations and internal quotation marks omitted). "Indeed, '[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.'" *Id*.

The government also asserts that, in the context of naturalization, "Congress has explicitly stated that the findings of the Board of Immigration Appeals ("BIA") or an immigration judge in terminating removal proceedings do not have any effect on the question of whether the USCIS should grant citizenship." Response at 6. Specifically, 8 U.S.C. § 1429 states in relevant part that:

> [N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act: Provided, *That the findings of the Attorney General in terminating removal proceedings or in canceling the removal of an alien pursuant to the provisions of this chapter, shall not be deemed binding in any way upon the Attorney General with respect to the question of whether such person has established his eligibility for naturalization as required by this subchapter*

8 U.S.C. § 1429 (emphasis added). According to the government, "[b]y implication, Congress must have intended that the findings of an immigration judge terminating removal proceedings should have no effect on citizenship determinations by USCIA." Response at 7. To the contrary, as an initial matter, the court notes that § 1429 states that the decision of the *Attorney General* to terminate or cancel removal proceedings as to a certain individual is not binding on the *same Attorney General* as to whether that individual subsequently establishes eligibility for naturalization. In other words, simply because the Attorney General decides to terminate or cancel deportation proceedings does mean that the Attorney General is precluded from subsequently contesting that individual's eligibility for naturalization. It appears that § 1429 would be used to deflect a judicial estoppel argument by an individual attempting to establish eligibility for naturalization.

This section, however, does not address the effect of a final judgment when an agency decision is issued after a full and fair hearing on the issue. Thus, it is inapposite. In any event, even if the language of the statute were apposite, given that the express language in § 1429 that an earlier decision by the Attorney General would not affect the Attorney General's position at a later proceeding shows that Congress knew that it could specifically address the issue of estoppel and chose not to do so in the context of a request for a declaration of citizenship. As such, the court can assume that the absence of express language regarding estoppel in the INA should not be disregarded. *LaDuca v. Swirsky*, 02 C 8597, 2003 WL 23162437, at *6 (N.D. Ill. Jul. 24, 2003) ("The reasoning behind these rulings is that 'there is no mention of conspiracy in the text of § 10(b). Just as Congress clearly knew how to impose aiding and abetting liability when it chose to do so, thereby suggesting that its absence from § 10(b) should not be disregarded, the existence of statutes expressly providing for conspiracy liability ... warrants the same conclusion here.'")(citation omitted).

Thus, the court concludes that collateral estoppel may be applied in the instant case.

C. <u>Has the plaintiff satisfied the elements of collateral estoppel</u>?

As noted by the Seventh Circuit:

> Administrative agency decisions will only be given preclusive effect under the collateral estoppel doctrine if (1) the original action was properly before the agency, (2) the same disputed issues of fact are before the court as were before the agency, (3) the agency acted in a judicial capacity, and (4) the parties had an adequate opportunity to litigate the issue before the agency.

*Meyer v. Rigdon*, 36 F.3d 1375, 1379-80 (7th Cir. 1994)(citations omitted).

1. *The original action was properly before the agency.*

Neither party disputes that the original action was properly before the IJ and the court concludes that the original action was properly before the IJ. The government, however, asserts that the IJ did not have authority to declare the plaintiff a citizen. As the plaintiff notes, however, collateral estoppel addresses whether an issue has already been litigated, not the extent of the authority of, in the instant case, the IJ. *Chicago Truck Drivers, Helpers & Warehouse Union Pension Fund v. Century Motor Freight*, 125 F.3d 526, 530 (7th Cir. 1997) ("Collateral estoppel (also called 'issue preclusion') refers to the simple principle that 'later courts should honor the first actual decision of a matter that has been actually litigated.'")(internal citations omitted). Here, the court has the authority to declare the plaintiff a citizen. The plaintiff is simply arguing that the *factual basis* for that determination has already been fully and fairly litigated such that collateral estoppel applies to that determination.

2. *The same disputed issues of fact are before the court as were before the agency.*

Again, while the government does not disagree that the same issues of fact are before the court as were before the IJ, it asserts that because the legal standards governing their resolution are different, collateral estoppel does not apply. According to the government, the plaintiff's removal proceedings and the district court action involve different legal standards and different burdens of proof and persuasion. Specifically, the government asserts that while it bore the burden of proving alienage by clear and convincing evidence at the removal hearing, the plaintiff is now required to prove her claim of derivative citizenship by a preponderance of the evidence. Thus, because the burdens are different, the government contends that collateral estoppel should not apply. *Freeman United Coal Min. Co. v. Office of Workers' Compensation Program*, 20 F.3d 289, 294 (7th Cir. 1994)("Collateral estoppel should not apply where the party against whom preclusion is sought faced a heavier burden of persuasion in the first action compared with the second.")(citation omitted).

Ortega agrees that "[t]he burden to establish alienage in a deportation proceeding is upon the Government." *Matter of Tijerina-Villarreal*, 13 I. & N. Dec. 327, 330 (BIA 1969).

However, "[w]hen there is a claim of citizenship . . . , one born abroad is presumed to be an alien and must go forward with the evidence to establish [her] claim to United States citizenship." *Id*. (citation omitted). Thus, in a removal proceeding where the individual's defense is U.S. citizenship, the burden is on the individual to prove her claim of citizenship by a preponderance of the evidence "sufficient to overcome the presumption of alienage which attaches by reason of h[er] birth" outside the United States. *Id.*

The plaintiff concedes she was born in Mexico but contended at the hearing before the IJ that she was a U.S. citizen by virtue of her father's U.S. citizenship and his common-law marriage to her mother in Texas. Thus, Ortega bore the same burden of proving her claim of citizenship by a preponderance of the evidence before the IJ as she has in the instant action. Accordingly, because the burden does not change between the two proceedings, the court finds the government's argument in this respect inapposite.

### 3. *The agency acted in a judicial capacity*.

"An agency acts in a judicial capacity when it provides the following safeguards: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations at the hearing, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence at the hearing, and (7) final findings of fact and conclusions of law." *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1300 (7th Cir. 1992).

As noted in the plaintiff's motion, while the parties did not necessarily take advantage of each of these safeguards, federal regulations allow for each of these procedural safeguards. *See* Plaintiff's Memorandum in Support of Motion for Summary Judgment at 5-7 (*citing* 8 U.S.C. § 1362 and 8 U.S.C. § 1229a(b)(4)(A)(providing for representation in removal proceedings); 8 U.S.C. § 1229a(b)(4)(B)(individuals subject to removal proceedings "shall have a reasonable opportunity to examine the evidence against" them); 8 C.F.R. § 1003.35 (providing for issuance of witness and document subpoenas as well as depositions); 8 C.F.R. § 1003.21(b) and 8 C.F.R. § 1003.23(a)(providing for submissions of memoranda of law); 8 C.F.R. § 1240.1(c)(indicating that immigration judge is to rule on objections to evidence); 8 C.F.R. § 1240.12 (IJs must issue final findings of fact and conclusions of law).

In addition, the parties were represented by counsel and the government was allowed to cross-examine the plaintiff's witnesses at the hearing before the IJ, and the parties could introduce exhibits and object to the evidence.

Whether the IJ made findings of fact and conclusions of law at the end of the hearing, however, is a more complicated issue. The plaintiff attached a transcript of the hearing, which was provided to her by the government after she issued a discovery request for it. According to the government, its search for the proceedings before the IJ turned up only three cassette tapes. The government states that the "quality of the[] cassette tapes [containing the hearing] was exceptionally poor" and that "[s]ome of the contents were barely audible; at certain points, the reverse side of the cassette recordings came through to the playing side." Government's Position

Statement, at 2, Dkt. #73.  Both sides agree that the transcript provided by the government does not include the oral decision of the IJ.  Indeed, at the end of the hearing, the IJ appears to begin his oral decision, by stating "this is the oral decision of the Immigration Judge to be transcribed separate and apart from the record of proceedings in this case."  Transcript of Hearing before the IJ, at 61, attached as Exh. 9 to Plaintiff's Local Rule 56.1 Statement of Facts, Dkt. # 62-9.  The IJ then orally sets out the caption of the case and begins reciting the charge against the plaintiff, but the recording abruptly ends there.  At the court's request, the parties each submitted position statements regarding the whereabouts of the IJ's oral decision and any effect of the lack of an oral decision on the plaintiff's collateral estoppel argument.

The government states that while it was able to locate the three cassette tapes capturing the hearing, "there was no recording of the immigration judge's oral decision terminating those proceedings."  Government's Position Statement at 1, Dkt. #73.  The plaintiff states that she has "repeatedly inquired" of the government whether any recordings of the IJ's oral decision exist, but has been consistently informed that no such recording exists.  Plaintiff's Position Statement at 1, Dkt. #70.  The plaintiff, however, contends that despite the absence of the oral decision, a finding of collateral estoppel is proper because it is clear that the IJ ruled in her favor based on her affirmative defense of U.S. citizenship for which she bore the burden of proof.  *Clark v. Bear Stearns & Co., Inc*., 966 F.2d 1318, 1321 (9th Cir. 1992)("When the issue for which preclusion is sought is the only rational one the factfinder could have found, then that issue is considered foreclosed, even if no explicit finding of that issue has been made.")(citation omitted).  The government, unsurprisingly, disagrees.

As noted by the government, "[i]t is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."  *Clark v. Bear Stearns & Co., Inc*., 966 F.2d 1318, 1321 (9th Cir. 1992) (citations omitted).  Here, the court concludes that the portion of the transcript that is currently part of the record provides a sufficient basis on which to conclude that the issue of the plaintiff's citizenship was appropriately litigated.  Just before beginning what was to be his oral decision, the IJ stated as follows:

> I note that the Respondent's [i.e., the plaintiff's] position is that obviously she submitted sufficient evidence on both issues on the fact that the Respondent under the laws of Texas, while her parents were engaged in a common law marriage as well as the fact that the evidence supports the fact that her father has met the requirements necessary to have the Respondent have acquired citizenship.  I'm aware of that.  So I ask that you just hold off on the argument.

Transcript of Hearing Before IJ, attached as Exh. 9 to Plaintiff's Local Rule 56.1 Statement of Facts, Dkt. #62-9.  The IJ then began his oral decision and, it appears from the transcript, the recording cut off.

During the hearing, the IJ discussed the law applicable to the case and the plaintiff's

Page 7

position regarding her U.S. citizenship, heard the testimony of several witnesses, acknowledged the documentary evidence that had been presented, and concluded in his written order that the removal proceedings were terminated because "Respondent has established that she acquired U.S. citizenship through her U.S.C. [U.S. citizen] father Alfredo Ortega pursuant to 301(g) of the INA."[2]  Order of the Immigration Judge, attached as Exh. 11 to the Plaintiff's Local Rule 56.1 Statement of Material Facts.  The court finds that the record as a whole demonstrates that the IJ considered the relevant facts and the law regarding the plaintiff's citizenship, as presented by the parties, and concluded that she had successfully established that she acquired U.S. citizenship. *See In re Dutton*, Bankruptcy No. 394-36575-ELP7, 1995 WL 759031, at *6 (Bkrtcy. D.Or., Oct. 13, 1995) ("findings of fact and conclusions of law may not be present or may not be sufficiently detailed or specific and the party asserting collateral estoppel may . . . be required to present portions of the records, including pleadings and pertinent transcripts") (internal citations omitted).

Based on the record of what transpired before the IJ, the court finds that IJ acted in a judicial capacity.

> 4. *The parties had an adequate opportunity to litigate the issue before the agency*.

Although the government does not assert that it did not have an adequate opportunity to litigate the issue before the IJ in this case, it generally suggests that collateral estoppel cannot apply because different procedures govern the proceedings.  The government notes that the Federal Rules of Evidence do not apply in removal proceedings, that relevance and fundamental fairness are the only bars to admissibility of evidence at removal hearings, that there is no right to pretrial discovery in removal proceedings, and that the plaintiff made a "last minute" submission of a merits brief five minutes prior to the commencement of her removal hearing.

As discussed above, contrary to the government's assertions regarding pretrial discovery, the applicable statute and regulations allow for subpoenas and depositions in removal proceedings and allow a party to object to the other party's submission of evidence.  Moreover, the government fails to indicate how any differences in the procedures used before the IJ caused it any prejudice.

Given that the record reflects that the plaintiff and the government participated in the hearing before the IJ and had available to them the procedural safeguards noted above, the court concludes that the parties had an adequate opportunity to litigate the issue before the IJ. *Avitia v. Metropolitan Club of Chicago, Inc*., 924 F.2d 689, 691 (7th Cir. 1991)("Once a party is afforded a hearing on an issue that comports with due process (and we presume, subject to the presentation of evidence to the contrary, that this is normally the case), we will further question

---

[2]While not listed as a factor in ascertaining whether an agency acted in a judicial capacity, the court notes that the government could have appealed the IJ's decision, *see* 8 C.F.R. §§ 1003.3 and 1003.38, but chose not to.

the hearing's fairness for the purposes of applying collateral estoppel only in certain categories of cases where fairness concerns are especially pronounced; otherwise, if the operation of collateral estoppel in every case necessitated a mini-trial into the fairness of prior proceedings, the value of preclusion would be vastly diminished.").

> D. Should the court not apply collateral estoppel for equitable reasons?

Finally, the government asserts that the doctrine of collateral estoppel is based in equity and that courts should be flexible in its application. As such, the government argues that the "interests of justice are best served by proceeding to trial *de novo* in this case," Government's Opposition to the Plaintiff's Motion for Summary Judgment at 13, Dkt. #61, because the plaintiff has a serious criminal history. While it is true that the Sixth Circuit held in *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, (6th Cir. 2006), that "[l]egislative policy dictates that the bar against relitigation must drop when the alien continues to commit criminal acts after initial immigration proceedings," *id.* at 391, that case is distinguishable. In *Duvall*, the IJ did not make a determination of citizenship, as the IJ did here. Instead, the IJ in *Duvall* terminated removal proceedings when the government could not secure answers from the plaintiff about her birthplace or alienage. The Sixth Circuit concluded that collateral estoppel should not preclude the government from relitigating the plaintiff's citizenship because "[t]he termination of th[e] proceedings [before the IJ] had limited collateral effect. [The plaintiff] had not been granted citizenship and was undoubtedly deportable. She remained in the United States not by any affirmative entitlement, but by virtue of a simple litigation error." *Id.* at 392. Thus, the court concluded that collateral estoppel did not apply.

Here, however, the IJ fully litigated the issue of the plaintiff's citizenship with both parties present and participating, concluded that the plaintiff could not be removed on the ground that she had established citizenship through her father, and the government failed to appeal. The court can ascertain no basis in the instant case why equity precludes the application of collateral estoppel to the IJ's decision.

**Conclusion**

Accordingly, the court grants the plaintiff's motion for summary judgment [59-1]. *See Medina v. INS*, 993 F.2d 499, 500-502 (5th Cir. 1993)(per curiam)(concluding that the government's prior concession in exclusion proceedings before the IJ that the petitioner had a proper claim to citizenship was *res judicata* and stating that having so conceded, "the INS cannot now challenge [the petitioner's] citizenship simply by treating the original proceeding as though it had never happened and starting all over again under a different section of the immigration law."). The parties are directed to meet and confer regarding a proposed judgment order and to file a proposed order no later than November 19, 2010. In the event the parties are unable to agree on a proposed order, the plaintiff shall file a proposed judgment order and the government shall file a brief statement indicating the basis for any objections to the proposed order.

**ENTER:**

**DATE:** November 5, 2010

                                                                                                         */s/ Blanche M. Manning*
**Blanche M. Manning**
**United States District Judge**